Your Honor, may it please the Court. Mr. Presiding Judge, may I remove my mask? Yes. Thank you. As your Honors know, this is our second trip to the Court of Appeals. After this Court vacated the District Court's order denying summary judgment to Officer Thompson on qualified and official immunity grounds on August 19, 2019, the District Court committed reversible error on February 11, 2020, when it ignored record facts that it had previously credited to the appellants here, improperly credited Officer Thompson's version of the facts, and granted summary judgment to Officer Thompson on qualified and official immunity grounds. Because of that error in this appeal, we ask that the District Court's order granting summary judgment to Officer Thompson be reversed, the case remanded for a jury trial, including reversal of a prior… I don't know that it's fair to say the Court had previously credited. We reversed because we couldn't tell what it was credited and what wasn't. Well, Your Honor, I believe that this Court's order was to vacate the prior order of summary judgment because it hadn't properly analyzed. Explain the view of the fact better, which the Court didn't. So, first of all, I'll address qualified immunity and the clearly established law that requires… And just to add to what Judge Logan said, I think that the opinion said under the plaintiff-friendly version of the facts. So the instruction, I think the mandate from this Court was quite clear. The mandate was clear but not followed by the District Court, which is why we're here seeking reversal of that order, Your Honor. And if I can explain. Sure. Well, what's our standard of review when we claim that they didn't follow our mandate? Well, the standard of review… The standard of review is de novo. On that issue? On all issues, Your Honor, in this appeal. And what we're saying is… That's generally true of a qualified immunity appeal. What we're saying is… You say that all the time about how easy the standard of review is, and it's anything but. I would submit to Your Honor, after working on this case for nine years, it's far from easy. It's very difficult. Forty depositions later, it's very difficult. Two trips to the Court of Appeals, it's very difficult. I guess my point is even if we agreed with you that the facts should be interpreted differently, I would not vote to reverse in this case because the Court didn't follow our mandate. Well, but Your Honor, must… Which you're asking us to do. What I'm asking you to do is to look at the district court's improper conclusions of fact, crediting the wrong person with the facts. What the district court did is he gave all of the facts to the moving party instead of the non-moving party, Your Honor. In my view, this case turns on the application of Anderson v. Liberty Lobby. And the question is not, in other words, the fact that other police officers couldn't confirm what Thompson said he saw does not permit you to defeat summary judgment. You have to have affirmative evidence to the contrary, as there was in our Wheelett v. Brooks case. And we have that in the record. What officer did anything more than say, I didn't see that? All right. So, if I may, in the Wheelett case, Judge Whipple granted summary judgment. The Eighth Circuit, I believe Judge Wolman wrote that opinion, reversed saying that there was record evidence that was ignored by the Court and that the district court, as the district… And it was spelled out in the opinion. I've read that. It's clearly distinguishable from this case until you tell me what there is similar to the witness who said, I saw him with his hands up. I'll give you an example, Your Honor. Officer Straub, who Ryan was standing in front of, in the process of raising his hands from the side of his body up to his waist when he was shot. He was on the other side. Officer Straub was standing directly in front of Ryan Stokes when Officer Thompson from behind… They had a different perspective. Well, but Wheelett, if Your Honor is relying on Wheelett, one thing else that Wheelett teaches us is that… I'm not relying on Wheelett. I thought you just mentioned Wheelett. I'm relying on Anderson v. Liberty Lobby and trying to apply that as the Supreme Court would have it. But Your Honor asked me to give you positive evidence… Not testimony by other officers that couldn't confirm Thompson, but that affirmatively refuted. I don't think… I disagree with Your Honor. Would you like for me to tell you why? Well, Straub is one example of what needs to be considered from that standpoint. In Wheelett, the reason the court reversed is because there were two independent witnesses that said that the victim of the shooting tossed the gun down. The police officers testified they did not see that. Judge Whipple granted summary judgment because Judge Whipple thought that's conclusive. The officers said they didn't see that. What the court did, though, is they said just because witnesses are observing things from different perspectives does not mean they did not see the same thing. That's our case, Your Honor, and that's why this case should be reversed and sent back for trial because we have a multitude of evidence after four… Wait. What else besides Straub? Officer… Of another officer… I'm about to tell you. All right. Officer Straub said, I never heard any commands, not one. Officer Villafane said, I didn't hear any commands, not one. That's not refuting. It absolutely is refuting, Your Honor. They're in a parking lot in a tight space. Officer Thompson testified in his deposition there was no reason that those officers should not have heard his commands. It is positive proof that there were no commands, that no one except Thompson, who said he told Ryan Stoke to drop the gun and show me your hands, heard those commands. Only one officer, Officer Jones, his partner, who was standing 15 feet behind him, said he said, get on the ground. That's not even a command that Officer Thompson claimed to have given in this case. Here's another piece of record evidence, positive proof that what Thompson claims to have seen is not accurate and the district court ignored this evidence. When this happened in the parking lot, Ryan had gone to the car and unlocked the car with a remote. The lights were on. The headlights were on. Thompson was standing on the side of the Monte Carlo. Whoops, there went all my notes. A lawyer's worst fear. Was on the side of the car looking at Ryan in front of him, illuminated by the headlights. And if Thompson claims that he didn't see Officer Straub standing directly behind Ryan Stokes in his backdrop, that's refuted by the evidence that the headlights of the Monte Carlo were on and he could see them. We don't have to take William Thompson's word for it. We have positive evidence in the record that has been ignored by the trial court. Let me ask you this. May I pick up my notes? Sure, yeah. And you may need your notes for my question. Who knows? I guarantee you I will, Your Honor. Thank you. So the Thompson v. Hubbard case, A Circuit 2001, very similar facts. I understand there are a couple things that were different, but very, very close. Like there was an armed robbery. But again, the circumstances are very similar. And so an officer looking or knowing about our Thompson v. Hubbard case, there we said there's no constitutional violation. And so I wonder whether even if everything you say is right, a reasonable officer under the circumstances could look at Thompson v. Hubbard and say, you know what, this isn't a clearly established violation. Because Thompson v. Hubbard came out the exact opposite way on the constitutional right issue. Here's why I think that that case is inapposite. One of the mistakes that the district court made, first of all, is not developing the plaintiff-friendly facts. That's patently clear from the order itself, where in one paragraph, four separate times, the district court says that Ryan had a gun. That is clearly disputed by the record evidence. How can a gun that the owner said was always in his car magically appear in Ryan's right hand? First of all, that's a distinguishing fact. Once you give that fact to the plaintiff, as the district court should but did not, then you've got to run with that fact, the entire opinion. You can't pick and choose, well, for purposes of summary judgment, I'm going to decide that there was no gun but then give it back to William Thompson in its analysis of whether or not the law was clearly established. Am I making sense? I don't think you can have it one way or both ways. No, I agree that you can't. You've got to assume that he did not have a gun. But I think you also have to assume that he was looking at N.S. or looking at Mr. Stokes from the back and that he necessarily couldn't see the hands. From the back and the side. And so that makes Thompson. From the back and the side. Okay. Well, okay, fair enough. But that makes it a little closer than the earlier, a little closer to the earlier Thompson v. Hubbard case, I think. But it's also similar to Wheelout, Your Honor, where the police officers were granted summary judgment, given qualified immunity because they said, we didn't see him throw the gun down. Two independent witnesses in a totally different location said, yes, he did throw the gun down. That's a question of fact for the jury. Okay. Let's assume that both cases are before an officer. And I know we're engaging in a little bit of a fiction here because officers don't necessarily read all these cases that we write. But assuming those two cases are sitting there, it still isn't clearly established. An officer could look at this and say, gosh, there's maybe a little gray area here. And this case might be close to the Thompson. I don't think it's gray. When you give the plaintiff-friendly facts to the plaintiff, that's the proper party to give them to. There is no gun. There were no commands. The door of the Monte Carlo did not open and close. That's a very important fact that Judge Loken, you asked me about when we were here before. That is directly refuted by Officer Thompson's fellow law enforcement officer, Officer Villafane, who said, I was watching him. He pulled and pulled and pulled on the door, but he never got it open. And so that's a critical, pivotal fact. He could not have put the gun inside the Monte Carlo if, as Officer Villafane testified, he kept pulling and pulling and pulling on the door, but he never got it open. That is direct evidence refuting Thompson's claim, well, he says, he must have thrown it inside the car because I found it on the front seat, the front driver's seat of the car. But if he never opened the door, how is that possible? So if you give the plaintiff-friendly fact, and I have two minutes and 42 seconds left, so I'm going to sit down after I say this unless you have other questions. If you give the plaintiff-friendly fact that he had no gun, not a single command was given to this young man that he was about to be shot to death, and the car door, the Monte Carlo car door never opened and closed, this is as close to Tennessee versus Garner as you can get. We've also cited at least seven other clearly established cases that have far more egregious activity involved in terms of the victim that was shot, like Noe versus Storley, for instance, like Mance versus Samus, for instance. Those are cases which preexisted 2013 and put officers on notice, and it was clearly beyond debate, that if you don't give somebody a warning, that's not constitutional and that's wrong. And I'll sit down and reserve my time for rebuttal. Thank you. Mr. Simon.  Jeff Simon for the appellees in this case. It's good to see you again. I'm joined by Michael Raup at the council table. Here are the undisputed facts. Officer Thompson was told that officers were involved in a foot chase. You're going to have to speak up for me. I'm sorry. Officer Thompson was told over the radio that the officers were involved in a foot chase. By definition, that means that we have a noncompliant suspect. If he's running from the police, he's a noncompliant suspect. Also undisputed, the entire encounter from when Officer Thompson first saw Mr. Stokes to the point at which he made the decision to fire was seven to ten seconds. Also undisputed, that as Mr. Stokes came around the corner and ran to the Monte Carlo, he did open the door. And the testimony is in the brief that establishes that. All the officers testified that he opened the door and reached into the vehicle. Still in this time period, however long that was, five to seven seconds, Officer Thompson in full uniform with his weapon drawn, pointing the gun at Mr. Stokes, has not made a decision to shoot. He doesn't make the decision to shoot until after the door is opened. Mr. Stokes reaches in the vehicle or lunges, depending on which testimony you believe, comes back out, turns. It is undisputed from that point, when Mr. Stokes backs from the vehicle, that from that point forward, Officer Thompson cannot see his hands. It is undisputed that Officer Thompson cannot see the right hand. Now opposing counsel says that we have to credit the fact that the Monte Carlo door was never opened. Is that wrong in your view? And if so, why? I think it is. He's pointing to testimony of Officer Villarain, who was chasing another suspect across the parking lot. I don't recall seeing that stated in the brief, Your Honor. And honestly, I'm not familiar with the portion of the record where that is substantiated. We cite you repeated instances in the record where everyone agrees that he opened the car door. Officer Villarain was engaged in a foot chase with the other individual, Mr. Kahn, on the other side of the parking lot, was telling Mr. Kahn to get on the ground. Mr. Kahn threw his gun under a car at that time. So Officer Villarain was very occupied during these couple of seconds that this happened. Officer Thompson does not make the decision to shoot until Mr. Stokes reengages. Mr. Stokes, who is running away from the officer, turns and begins to go toward the officer. A critical fact in this case is that Mr. Stokes has turned and run toward the pursuing officer, and it is undisputed that when that happens, Officer Thompson cannot see his right hand. Undisputed in the summary judgment briefing. Officer Thompson then testifies that he makes his decision in the one to two seconds between the time Mr. Stokes turns to reengage with the pursuing officer, and he sees the officer come around the corner out of the corner of his eye. So this decision is a classic qualified immunity split second decision that an officer has to make in the most tense and uncertain circumstances imaginable. He's got one to two seconds to decide whether to shoot or not shoot. And as he testified, he wasn't willing to gamble with the fellow officer's life in that decision. I would submit to the court that this is the reason why qualified immunity exists. This case is just like this, where officers have to make these decisions like that. Of course, one of the things that's happening in this case, too, which makes this harder than the average case, although Judge Logan asked opposing counsel about it, is you do have a situation in which it's a little unusual because the other officers say, we think he was trying to surrender, and that is potentially a problem. Yeah, I understand, Judge Strauss. And you raised this last time we had this discussion, and I appreciate it. And I think that the answer to that question is very clear when you understand the perspectives of the officer. And you may recall, you know, that Officer Thompson was, in effect, where Judge Logan is, and Officer Straub is coming this way, which is why Officer Thompson can't see the gun and Officer Straub can. What is also undisputed here, and Mr. McAllister demonstrated it, he demonstrated it correctly, is that what Officer Thompson saw were the hands raising, okay? He saw them coming up from the side to the waist. It is undisputed that the shots were fired as the hands were raising to the waist and he couldn't see it. What that means is that when Officer Straub sees someone raising their hands and can clearly see his hands are empty, he assumes that is an indication that the hands are going to come up here to surrender. What Officer Thompson sees is potentially a weapon being raised. To be pointed at an officer, he has been fleeing for two blocks and is now turning around to reengage. Your Honor, there was a good deal of discussion about the Wheelock case. Of course, that was from 2017, four years after this incident, and cannot serve on the clearly established element, which both in the last appeal and in this appeal did not get much attention from the appellant, from the plaintiff in this case. And that's because they don't have a case that clearly establishes that Officer Thompson should have known that only a plainly incompetent officer would not have known that what he did here was wrong. I don't need to familiarize this Court with the standard that the Supreme Court has articulated time and time again, as has this Court, about the strict requirements of the clearly established element. They are simply not met here. If you examine the cases that the plaintiff relies on, one of them is the Garner case. And clearly that cannot establish, by its own terms, it cannot establish clearly established on the facts. What about the warning issue? The warning issue. Thank you, Your Honor. Officer Thompson and Officer Jones both testify a warning was given. They are relying on the testimony of Officer Straub, who said he did not hear a warning. But wasn't it true that Officer Jones testified she wasn't sure from whom the warning came? No, Your Honor. Respectfully, Officer Jones did testify, and we cite this in our brief, that she did hear Officer Thompson give a warning. What she said is she heard, I believe she said she heard, get on the ground. And what Officer Thompson said, his warning was, was show me your hands and drop the gun. So Officer Jones says she recalls hearing a different warning than the one that Officer Thompson says he gave. But she is unequivocal that she heard him give a warning. Well, I think her testimony was perhaps different in a way that would not give me the same confidence she would have in exactly what it was she was saying. Yes, at the Joint Appendix at page 1255 and 1256 is Officer Jones' testimony in that regard, Your Honor. Yes, I've read that. Thank you. Okay, thank you. Suppose we conclude that there was no warning given, that that is the plaintiff-friendly version of the facts. Qualified immunity or no qualified immunity? Yes, absolutely qualified immunity. Okay, tell me why. Well, first of all, I think it is still objectively reasonable because, again, this decision is made at one to two seconds. Secondly, this is a suspect who has been being chased for a block and a half. He has seen Officer Thompson in uniform with a gun pointed at him. The purpose of the warning is to give the suspect an opportunity to know that he needs to stop and become compliant with whatever it is the officers want him to do. Mr. Stokes had every occasion to do that and didn't. So the warning, I don't think, is as material in this case as it might be in others, particularly given that we have one to two seconds in which he has to make this decision. Counsel, if Mr. Stokes, in fact, did not have a gun, wouldn't it be plainly incommon for Officer Thompson to have shot him? If he could see that? Respectfully, no, Your Honor, because this case resets when Mr. Stokes reaches in the vehicle. I'm sorry. The analysis, in effect, if we want to assume that Mr. Stokes did not have a weapon, that Officer Thompson did not see a weapon in his hand, what happens is a fleeing suspect, a noncompliant suspect, reaches into a place of concealment, a car vehicle, comes back out, and then moves in the direction of a pursuing officer, raises his hands in a manner consistent with raising a weapon, and the Officer Thompson cannot see whether there's a weapon in his hand or not. This is entirely consistent with the Thompson case, the Billingsley case, the others that we cite, where this Court has said a reasonable mistake as to whether the suspect has a weapon or not can be objectively reasonable, if it is an objectively reasonable mistake. And that is the mistake in this case that is at issue is after Mr. Stokes left the vehicle and the hands began to raise. He thought there was a weapon. It turned out there was not. However, I think that the propriety of that being an objectively reasonable mistake is only underscored by the fact that, in fact, there was a gun in the car. It is undisputed there was a gun on the seat of the car that Mr. Stokes had just reached into. We have been talking mostly about the objectively reasonable element here, the clearly established element. I think that we've cited your cases. You've read them. Happy to discuss them if you'd like. But I think that what we need to keep in mind here that is key and that none of the cases they cited and none of the cases we found establish are two things. One, we have a noncompliant suspect who's running from another officer. That's what Officer Thompson understands. He is in motion going one direction and then turns to confront and moves in the direction of the pursuing officer. Now, one thing you see in these cases on the clearly established element in objective reasonableness is if an individual is moving away from the officer, that is a very different circumstance than when the individual is moving toward the officer. Moving toward the officer is a greater threat. What Officer Thompson saw was Mr. Stokes moving toward the officer. We don't have that in any of the cases that they cite. We also have undisputed, at summary judgment, Officer Thompson could not see the right hand. So we have an individual, noncompliant, fleeing, going toward an officer with hands that can't be seen. There's not a case certainly that I've seen, certainly not a case that the plaintiff has met their burden on, that says that under those circumstances it is clearly established that Officer Thompson should not have shot in the one to two seconds he had to make that decision. I have three and a half minutes left, but if your honors have any other questions, I'll be happy to address them. I think the official immunity is resolved by wheel lot. There's no malice or bad faith showing here as a district court found. If the court has any further questions. Thank you, your honors. I have one minute, 45 seconds. Noncompliant, fleeing, going toward an officer with hands that can't be seen.   Thank you, your honors. The word suspect implies commands. If there were no commands, there's nothing to be compliant about. That fact has to be given to Ryan Stokes. What about the fact, just to counter that, that he'd been running for quite a while away from the officers? Does that make, does that put it in the noncompliant category? No, your honor, because they didn't know they were being chased. There is a lot of record, there are 40 depositions in this case. There's a lot of record evidence that no one that was within earshot of that foot chase heard any commands at all. Including Kenny Cann, who Mr. Simon just mentioned that he was running with. Kenny Cann testified that nobody said anything as they were running to the Monte Carlo. And you have to realize, and by the way, your honor, we are arguing facts right now. That's what we've been doing for the past half hour. We have been arguing facts in this case. That's for the jury. And by the way, the officers that were in the foot pursuit were almost an entire street length away from Ryan Stokes and Kenny Cann when the foot chase began. So how could they hear commands as they were running to the Monte Carlo? Mr. Simon wants to say that they were noncompliant because they were running from police. They were running because they'd just been pepper sprayed by police and they were going to their car at bar closing time. That was in the dispatch? We're talking about what Officer Thompson knew. And you mentioned that in the last appeal. I thought the dispatch said that there was a foot pursuit. Dispatch said there's a foot pursuit, two black males, and that the accusation was stealing. A low level crime. But then he hears that and around the car? Correct. Running comes Stokes. That's right. And then around the corner comes Stroud. That's right. And I'm out of time. May I respond? It just seems to me you're not taking all the facts. Well, your honor, the record facts go to the plaintiff in this case. We have record evidence that the shooting officer, William Thompson, could see his hands. The question was the noncompliance. You were attempting to assert there was no noncompliance if you just look at the time after the Monte Carlo episode, part of the episode. As this court held. The closing counsel said the noncompliance was apparent from the dispatch. That noncompliance was in the picture, so to speak. But how does a dispatcher sitting in an office building know what's going on in the street, your honor? You're talking about what Thompson had. This is all about Thompson. I understand that. You don't like qualified immunity law. Neither do a lot of other people, but that's what we deal with. And the qualified immunity law turns upon interpreting facts. No, it doesn't turn on interpreting facts, your honor. What it turns on is what are the plaintiff-friendly facts that go the plaintiff's way on summary judgment. We're talking about a deserving trial. All right. That's what we're talking about. I've been doing qualified immunity more years than you have. I think we both know what the landscape is. Indeed, I do, your honor. And I respect that you have been involved in this for a long, long time. Much longer than I have. Well, all right. Thank you, your honor. Thank you, counsel. The case has been thoroughly and well briefed and argued, and we'll take it under advisement. Judge Logan, I wonder if we can have a short break. You bet. Or it will be in recess for ten minutes or so. Thank you.